**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | **CR 11-00486-CJC** |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **MEMORANDUM OF DECISION** |
| ) | |
| **HUNG VAN TIEU,** ) | |
| ) | |
| **Defendant.** ) | |

**I.    INTRODUCTION**

The United States of America (the "Government") charges Defendant Hung Tieu with one count of conspiracy to commit access device fraud, two counts of fraudulent use of access devices, and one count of aggravated identity theft.  (Dkt. No. 16 ["Indictment"].)  After conducting a two-day bench trial, the Court finds Mr. Tieu guilty on all counts except for the first count of conspiracy.

//

## II.    FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. Count One – Conspiracy to Commit Access Device Fraud (18 U.S.C. § 1029(b)(2))

Count One of the Indictment charges Mr. Tieu with conspiracy to commit access device fraud in violation of 18 U.S.C. § 1029(b)(2).  Section 1029(b)(2) provides that "[w]hoever is a party to a conspiracy of two or more persons to commit an offense under [§ 1029(a)], if any of the parties engages in any conduct in furtherance of such offense, shall be fined an amount not greater than the amount provided as the maximum fine for such offense under [§ 1029(c)] or imprisoned not longer than one-half the period provided as the maximum imprisonment for such offense under [§ 1029(c)], or both."  *Id.* § 1029(b)(2).  To prove the elements of conspiracy to commit access device fraud, the Government must show beyond a reasonable doubt (1) that there was an agreement between two or more persons to commit access device fraud in violation of § 1029(a)(2); (2) that Mr. Tieu became a member of the conspiracy knowing of its object and intending to help accomplish it; and (3) that one of the members of the conspiracy engaged in one overt act in furtherance of the object.  Ninth Circuit Manual of Model Jury Instructions – Criminal Instr. 8.20 (2010) (hereinafter "Crim. Instr.").

The essence of a charge of conspiracy is the agreement to commit an unlawful act. *See Iannelli v. United States*, 420 U.S. 770, 778 (1975).  An agreement for the purpose of finding a conspiracy does not require that "the conspirators made a formal agreement or that they agreed on every detail of the conspiracy"; nevertheless, it is not enough "that they simply met, discussed matters of common interest, acted in similar ways, or perhaps helped one another."  Crim. Instr. 8.20.  Rather, a finding of conspiracy necessitates "that there was a plan to commit at least one of the crimes alleged in the indictment as an object of the conspiracy."  *Id.*

Here, the Indictment charges that in agreement with his co-conspirator, Tony Khac Nguyen and other unknown persons, Mr. Tieu conspired to request and receive replacement credit cards for unknowing victims and then use those credit cards to make unauthorized purchases of luxury goods.  (Indictment at 2 ¶ 2.)  This conspiracy to commit access device fraud was alleged to have been carried out between February 17, 2010 and continuing through on or about June 14, 2010.  (*Id.* at 1 ¶ 1; *see also* Trial Tr. at 6:23–25 ("The way that the Indictment was charged is that [Mr. Tieu] was charged with conspiracy to commit access device fraud that spanned from February 2010 to June 2010.") (Government Pre-Trial Argument).)

At trial, however, the Government presented evidence of wrongdoing over a much longer and later time period, specifically from January 2010 to February 2011.  As described below, the Government presented evidence to show striking similarities during this longer and later time period between the locations of the alleged fraud — mostly Ben Bridge stores; the type of purchases — usually Rolex watches priced above or near $10,000; and even the individual involved in the fraud — an elderly man of Asian descent bearing a clear resemblance to Mr. Tieu.  The Government further presented evidence connecting Mr. Nguyen to Mr. Tieu, including video footage of each of them making fraudulent purchases of Rolex watches while together at a Ben Bridge store in Henderson, Nevada.  The Government sought to use this evidence, considered together, to prove that Mr. Tieu engaged in a conspiracy to commit access device fraud.  The Government essentially proceeded on the theory that if between January 2010 and February 2011 it could prove the existence of an agreement to commit access device fraud, and prove an overt act in furtherance of the agreement, it could meet its burden of proving Mr. Tieu guilty beyond a reasonable doubt under Count One.

The Government's theory, however, suffers from a fatal flaw.  That is, the Indictment does not charge Mr. Tieu for conspiracy to commit access device fraud

between January 2010 and February 2011.  Instead, the Indictment only charges that Mr. Tieu engaged in a conspiracy to commit access device fraud between February 19, 2010 and June 14, 2010.  Therefore, in order to prove Mr. Tieu guilty of conspiracy, the Government was required to prove beyond a reasonable doubt that between these dates, Mr. Tieu had an agreement with another individual to commit access device fraud.  The Government failed to meet its burden in this regard.  It is entirely possible that during the time period between February 17, 2010 and June 14, 2010, Mr. Tieu engaged in fraudulent activity alone, and did not conspire with Mr. Nguyen or any other person.

The earliest evidence presented at trial suggesting an agreement between Mr. Tieu and Mr. Nguyen, or any other individual for that matter, is dated August 31, 2010.  The evidence showed that on August 31, 2010, an individual purporting to be victim T.L. placed a phone call to Bank of America to request a replacement credit card for the card number ending in 1920.  (*See* Exh. 25 (call notes).)  On September 1, 2010, that replacement credit card was used to purchase a Rolex watch at the Ben Bridge store in Riverside, California.  (*See* Exh. 21 (purchase receipt).)  Tina Hanns, the sales associate who was working at the store at the time of the purchase, identified Mr. Tieu as the individual that purchased the watch.  (*See* Trial Tr. at 122:25–123:11 (Hanns Testimony).)  Further, T.L. confirmed that she was not the individual that purchased the watch.  (Exh. 63 (T.L. Former Testimony).)

Later on September 1, 2010, Mr. Tieu attempted to purchase a Rolex watch at the Ben Bridge store in Temecula, California using T.L.'s credit card.  The sales associate, Richard Orduno, testified that upon inspecting the California Driver's License presented by Mr. Tieu, he began to suspect fraud and called the Riverside Sheriff to report his concerns.  (*See* Trial Tr. at 130:7–131:23 (Orduno Testimony).)  Riverside Sheriff's Deputy Karen Ferguson arrived on scene, and subsequently arrested Mr. Tieu.  (*See id.* at 134:6–23 (Ferguson Testimony).)  Deputy Ferguson testified that upon arresting Mr.

Tieu, she found in his possession two credit cards bearing victim T.L.'s name —
including the card that had been used to complete the purchase at Ben Bridge store in
Riverside — as well as a California Driver's License displaying Mr. Tieu's picture but
bearing T.L.'s name. (*Id.* at 135:8–21; Exh. 23 (credit cards and California Driver's
License bearing T.L.'s name).)

The Government further presented evidence that on August 30, 2010, a call to
Bank of America to obtain a replacement credit card for T.L. was placed from a phone
bearing the number 714-818-3547. (Exh. 25 (bank call notes) at 4.) From August 30,
2010 to September 1, 2010, that phone number was registered to a phone bearing an
identification number ending in 5860. (Exh. 55 (T-Mobile phone log) at 2.) Evidence
was further presented that between January 16, 2011 and January 25, 2011, that same
phone was associated with the phone number 714-724-1686. (*Id.* at 1.) On January 17,
2011, acting pursuant to a Court order, United States Postal Inspection Service
Investigator Sean Klenin, with assistance from representatives of T-Mobile company
representatives, traced the number to a home located at 9081 McClure Avenue,
Westminster, California. (Trial Tr. at 8:10–22 (Klenin Testimony); Exh. 57 (GPS
coordinates placing phone associated with number 714-724-1686 at the address on
McClure Avenue); Exh. 60 (court order).) Inspector Klenin testified that Jeanie Tran, a
known associate of Mr. Nguyen, (*see* Exhs. 51–53 (call from Ms. Tran to her bank
seeking to add Mr. Nguyen as a joint user of her credit card and bank records reflecting
the same)), had a vehicle registered to the McClure Avenue address. (Trial Tr. at 8:23–
9:13 (Klenin Testimony); *see* Exh. 59 at 1 (Tran vehicle registration).) Inspector Klenin
further testified that on January 19 and 20, 2011, he conducted surveillance of the
McClure Avenue home between about 4:30 a.m. and 5:30 a.m., and saw a Toyota Camry
registered to Mr. Tieu parked outside the McClure Avenue home. (*Id.* at 10:5–12:17
(Klenin Testimony); Exh. 59 at 2 (Tieu vehicle registration).) Inspector Klenin also

testified that he saw Mr. Nguyen at the home when he arrested him there in May 2011. (Trial Tr. at 12:22–13:4 (Klenin Testimony).)

Finally, the Government presented evidence — described more fully below with respect to Counts Three and Four — that on January 26, 2011, Mr. Tieu and Mr. Nguyen entered the Ben Bridge Jewelers store in Henderson, Nevada together and purchased three Rolex watches using fraudulently obtained credit cards.  (*See* Exh. 1 (video surveillance of the Ben Bridge store on January 26, 2011); Exh. 2 (Ben Bridge receipts from January 26, 2011).)  Taken together, the evidence proves that on or around August 31, 2010, the date on which a phone call was placed to obtain a replacement credit card for T.L. from a phone later found to be located at an address associated with Mr. Nguyen's known associate, Ms. Tran, an agreement existed between Mr. Tieu and Mr. Nguyen to commit access device fraud.  Moreover, taken together, the evidence further proves that on January 26, 2011, when Mr. Tieu and Mr. Nguyen together entered the Ben Bridge store in Henderson, Nevada and purchased Rolex watches using fraudulently obtained credit cards, they were acting in furtherance of their conspiracy to commit access device fraud.[1]

Importantly, however, none of the above described evidence proves beyond a reasonable doubt that between February 17, 2010 and June 14, 2010 — the dates for

---

[1]  At trial, Mr. Tieu sought to exclude evidence of his activities that transpired outside the confines of the dates alleged in the Indictment, including activities on September 1, 2010.  The evidence, however, was admissible non-character evidence speaking to Mr. Tieu's intent, plan, or knowledge to commit conspiracy, access device fraud, and aggravated identity theft.  While the September 1, 2010 transaction was not included within the scope of the Indictment as to any charged Count, as described in text, that transaction was substantially similar to those transactions alleged on February 19, 2010, January 26, 2011, and February 1, 2011.  In each of those transactions, replacement credit cards were used at similar stores to purchase similar types of luxury goods.  Based on the substantial similarity of the transactions, the Court finds that rather than constitute inadmissible evidence of character, the September 1, 2010 transaction constitutes admissible evidence under the Rule 404(b) exceptions.  *See* Fed. R. Evid. 404(b)(2).

which Mr. Tieu is charged with conspiracy — that an agreement existed between Mr. Tieu and Mr. Nguyen to commit access device fraud.  In fact, there was no evidence presented at trial to suggest that, between these dates, anyone else knew of or agreed to the actions Mr. Tieu took in furtherance of the alleged conspiracy.  There was not even evidence to suggest that Mr. Tieu and Mr. Nguyen were acquainted with each other prior to August 2010.  Therefore, while the acts committed between February 2010 and June 2011 were certainly similar to those committed between August 2010 and February 2011, a period during which a conspiracy was proved to exist, it is entirely reasonable to believe that until August 2010 — the earliest date at which there was any evidence connecting Mr. Tieu to Mr. Nguyen, and a date two months after the end of the charged conspiracy — Mr. Tieu acted alone in his scheme to commit access device fraud.  The Government's reliance on evidence of an agreement that post-dates the end of the conspiracy charged in the Indictment to prove that an agreement existed earlier is misplaced.  That evidence is insufficient to sustain a conviction on the conspiracy count charged in the Indictment.

## B. Counts Two and Three – Access Device Fraud (18 U.S.C. § 1029(a)(2))

Mr. Tieu is charged in Count Two of the Indictment with committing access device fraud — specifically using fraudulently obtained credit cards — in violation of 18 U.S.C. § 1029 (a)(2), between February 17, 2010 and June 5, 2010.  Count Three of the Indictment charges Mr. Tieu with having committed the same offense between January 10, 2011 and February 1, 2011.  Section 1029(a)(2) provides that "[w]hoever knowingly and with intent to defraud traffics in or uses one or more unauthorized access devices during any one-year period, and by such conduct obtains anything of value aggregating $1,000 or more during that period . . . shall, if the offense affects interstate or foreign commerce" be punished.  In order for Mr. Tieu to be found guilty of committing access device fraud, the Government must prove beyond a reasonable doubt that between

February 17, 2010 and June 5, 2010, and again between January 10, 2011 and February 1, 2011, Mr. Tieu (1) knowingly used unauthorized access devices at any time during a one-year period, (2) used the unauthorized devices during that period to obtain things of value, their value totaling $1,000 or more, (3) acted with intent to defraud, and (4) affected in some way commerce between one state and another state.  *See* Crim. Instr. 8.85; *see also United States v. Suphunthuchat*, 400 F. App'x 182, 183 (9th Cir. 2010). An "unauthorized access device" is any access device that is lost, stolen, expired, revoked, cancelled, or obtained with intent to defraud.  Crim. Instr. 8.85.  A credit card is a form of an access device.  *See United States v. Onyesoh*, 674 F.3d 1157 (9th Cir. 2012).

As to Count Two, the Government proved beyond a reasonable doubt that on February 19, 2010, Mr. Tieu knowingly and intentionally used an unauthorized access device to obtain luxury goods valued at over $1,000.  As to Count Three, the Government proved beyond a reasonable doubt that Mr. Tieu engaged in the same conduct on January 26, 2011, and February 1, 2011.

The Government presented evidence that on February 19, 2010, an individual purporting to be victim N.V. entered the Ben Bridge Jewelers in Henderson, Nevada and purchased a Rolex watch for $15,404.25 using a Chase Mastercard credit card ending in the number 7490.  (Exh. 31 (purchase receipt); Exhs. 33–35 (Chase Bank Account notes for victim N.V.).)  The card that was used to make the purchases was a replacement credit card obtained two days earlier via a rush replacement card request.  (Exh. 33 (Chase credit card notes).)  After the purchase was completed, the individual signed the receipt as N.V.  (Exh. 31 (purchase receipt).)  Images of the individual captured by the store's security camera show that he was an elderly man of Asian descent, bearing a clear and striking resemblance to Mr. Tieu.  (Exh. 30 (security footage still images).)  Further, the individual in the security images was not N.V., who testified that he did not request a replacement credit card from his bank, that he did not own a Rolex watch, and that he did

not sign the receipt completing the purchase of the Rolex watch in February 2010.  (Trial Tr. at 145:13–146:20 (N.V. Testimony).)

        The individual seen in the security images captured on February 19, 2010 was the same individual seen in security video footage captured at a Ben Bridge store in Henderson, Nevada on January 26, 2011.  (*Compare* Exh. 30 (images from February 19, 2010) *with* Exh. 1 (security footage from January 26, 2011).)  On that date, an elderly man of Asian descent, and purporting to be victim J.T., entered the Ben Bridge store in Henderson, Nevada along with a younger man of Asian descent.  (Exh. 1 (security footage from January 26, 2011).)  The older man was assisted in the store by its assistant manager, Andrew Schick.  Mr. Schick testified at trial that the older man purchased two Rolex watches that evening using a credit card belonging to J.T.  (Trial Tr. at 24:15–27:2 (Schick Testimony); *see also* Exh. 2 (purchase receipts).)  Like the card used in the February 2010 transaction, the credit card presented on January 26, 2011 was a replacement credit card that had been requested from the bank two days prior to its being used.  (*See* Exh. 6 (Bank of America credit card account notes).)  The two watches purchased with the replacement card cost $10,912.64 and $9,323.63 respectively.  (Exh. 2 (purchase receipts).)  In order to complete the transaction, the older man had to provide Mr. Schick identification, and had to provide his signature on the receipt.  (Trial Tr. at 22:11–23:2 (Schick Testimony).)  While the receipts were signed "J.T.," at trial, J.T. testified that he was not the individual that made the purchases.  (*Id.* at 171:14–172:7 (J.T. Testimony).)  Rather, at trial, Mr. Schick identified Mr. Tieu as the individual who he had helped to purchase the watches in January 2011.  (*Id.* at 32:19–24 (Schick Testimony).)

        The individual in the security images captured on February 19, 2010 and January 26, 2011, and identified by Mr. Schick as having purchased two watches in January 2011 while purporting to be J.T., was also the same individual captured on security footage at a

Chanel store in Costa Mesa, California on February 1, 2011.  (Exh. 10 (Chanel store security footage).)  On that date, the same elderly man of Asian descent purchased a Chanel handbag for $ 4,023.73 purporting to be J.T.  (Exh. 11 (Chanel purchase receipt).)  The credit card used in the Chanel store transaction was a Capital One credit card belonging to victim J.T., and which, like the Bank of America card belonging to J.T., was obtained via a request for a replacement card placed several days before the purchase.  (Exh. 15 (Capital One account notes).)  As with the Rolex purchases, J.T. also testified that he was not the purchaser of the Chanel bag.  (Trial Tr. at 172:14–16 (J.T. Testimony).)

Based on the evidence presented and testimony heard, the Court finds that the Government proved beyond a reasonable doubt that Mr. Tieu was the individual conducting fraudulent purchases using an access device on February 19, 2010, January 26, 2011, and February 1, 2011.  The security images and footage from those dates show the same individual engaging in purchases of luxury goods — an elderly man of Asian descent with dark hair and a receding hairline.  (*Compare* Exh. 30 (images from February 19, 2010) *with* Exh. 1 (security footage from January 26, 2011) *and* Exh. 10 (Chanel store security footage).)  Moreover, in the January and February 2011 transactions, the individual captured in the security images was wearing the same dark, square-framed glasses.  (*See* Exh. 1 (security footage from January 26, 2011); Exh. 10 (Chanel store security footage).)  Mr. Schick, the Ben Bridge sales associate who was working at the time of the January 26, 2011, identified the individual to whom he sold the watches as Mr. Tieu.  (Trial Tr. at 32:19–24 (Schick Testimony).)  The Court's own examination of the security footage and images, compared with its examination of Mr. Tieu at trial, further confirms the identification of Mr. Tieu as the individual in the security images.

The Court also finds that the Government proved beyond a reasonable doubt that Mr. Tieu's purchases with fraudulently obtained credit cards were conducted knowingly

and with intent to defraud.  Each of the replacement credit cards used in the three purchases was obtained after a replacement card was requested from the respective credit card companies by an individual purporting to be one of the victim cardholders.  (*See* Exh. 33 (Chase call notes requesting replacement card for N.V.); Exh. 6 (Bank of America call notes requesting replacement card for J.T.); Exh 13 (Capital One notes requesting replacement card for J.T.).)  In no instance were the replacement credit cards requested by the victim cardholder.  (Trial Tr. at 145:21–23 (N.V. Testimony); *id.* at 170:21–23 (J.T. Testimony).)  To obtain the replacement card, representatives from the respective banks testified that the individual had to answer specific security questions about the victim cardholder.  (*See id.* at 70:19–71:7 (Riblet Testimony); *id.* at 95:2–11 (Simcox Testimony); *id.* at 157:25–158:10 (Parise Testimony).)  Moreover, in order to complete the purchases, Mr. Tieu would have had to show identification that matched the replacement card he was using.  (*See* Trial Tr. at 22:11–18, 41:22–42:22 (Schick Testimony); *id.* at 182:17–183:2 (Rodriguez Testimony).)

While not charged in the Indictment, the circumstances surrounding Mr. Tieu's arrest on September 1, 2010, for attempting to purchase a Rolex watch using a fraudulently obtained credit card, provided further evidentiary support that Mr. Tieu's fraudulent use of access devices in February 2010, January 2011, and February 2011 was knowing and intentional.  As described above, Mr. Tieu was arrested on September 1, 2010 while attempting to purchase a Rolex watch using a fraudulently obtained replacement credit card bearing the name T.L.  As in the February 2010 and January 2011 transactions, the attempted purchase was at a Ben Bridge store.  As in the transactions charged in the Indictment, in order to complete the transaction on September 1, 2010, Mr. Tieu was required to present the store clerk with matching photo identification and credit card.  (*See id.* at 130:1–6 (Orduno Testimony).)  Mr. Tieu presented the clerk with a credit card bearing the name T.L. and a California Driver's License bearing the same name; the picture on the Driver's License was of Mr. Tieu.

(*See id.*; Exh. 23 (images of T.L. credit card and Driver's License).)  These facts further proved that in using the replacement credit cards to purchase luxury goods during the course of his scheme, Mr. Tieu acted knowingly and with intent to defraud.

Finally, the Court finds that the Government proved beyond a reasonable doubt that Mr. Tieu used the fraudulently obtained credit cards to obtain goods with value greater than $1,000, and that in doing so, had an effect on interstate commerce.  As described above, each of Mr. Tieu's purchases on February 19, 2010, January 26, 2011, and February 1, 2011, was for goods valued at over $1,000.  (*See* Exh. 31 (February 19, 2010 receipt); Exh. 2 (January 26, 2011 receipt); Exh. 11 (February 1, 2011 receipt).) The replacement credit cards used to facilitate these purchases were obtained through calls placed to banks located outside the state of California, (*see* Trial Tr. at 155:7–22 (Parise Testimony); Trial Tr. at 64:6–65:4 (Riblet Testimony)), and in the case of the February 2010 transaction and the January 2011 transaction, at Ben Bridge stores located in the state of Nevada.

Given the overwhelming evidence presented that on February 19, 2010, January 26, 2011, and February 1, 2011, Mr. Tieu knowingly and with intent to defraud used fraudulently obtained access devices to purchase luxury goods valued at over $1,000, the Court finds Mr. Tieu guilty on Counts Two and Three for access device fraud in violation of 18 U.S.C. § 1029(a)(2).

**C. Count Four – Aggravated Identity Theft (18 U.S.C. § 1028A(a)(1))**

Count Four of the Indictment charges Mr. Tieu with aggravated identity theft in violation of 18. U.S.C. § 1028A(a)(1).  Section 1028A(a)(1) provides that "[w]hoever, during and in relation to any felony violation enumerated in subsection (c), knowingly transfers, possesses, or uses, without lawful authority, a means of identification of

-12-

another person shall, in addition to the punishment provided for such felony, be sentenced to a term of imprisonment of 2 years."  Enumerated felony violations include access device fraud in violation of 18 U.S.C. § 1029(b)(2).  *See* 18 U.S.C. § 1028A(c)(4). In order to be found guilty of violating § 1028A(a)(1), the Government must prove beyond a reasonable doubt (1) that between January 10, 2011 and February 1, 2011, Mr. Tieu knowingly used without legal authority a means of identification of another person, (2) that he knew that the means of identification belonged to another person, and (3) that he did so during and in relation to a felony violation of 18 U.S.C. § 1029(a)(2).  *See* Crim. Instr. 8.83.  Under the statute, "means of identification" includes an "access device."  *See* 18 U.S.C. 1028(d)(7); *see also id.* § 1029(e)(1) (defining "access device"). Moreover, the forging of another's signature qualifies as a using a means of identification of another person, specifically, the name of that other person.  *See United States v. Blixt*, 548 F.3d 882, 887 (9th Cir. 2008).

As described above, the Government proved beyond a reasonable doubt that on January 26, 2011, and again on February 1, 2011, Mr. Tieu used a fraudulently obtained credit card belonging to victim J.T. to purchase two Rolex watches and a Chanel handbag — a violation of 18 U.S.C. 1029(a)(2).  It also provided evidence that in making these purchases, Mr. Tieu was required to present identification matching the credit card he was using, as well as to sign victim J.T.'s name on store receipts to complete his purchases.  (*See* Exh. 2 (January 26, 2011 receipt); Exh. 11 (February 1, 2011 receipt).) Victim J.T. testified that he did not authorize anyone to make these purchases.  (*See* Trial Tr. at 172:5–16 (J.T. Testimony).)

The Government also proved beyond a reasonable doubt that Mr. Tieu knew that the means of identification he was using belonged to another person.  First, the replacement credit cards Mr. Tieu used were obtained through phone calls to banks during which the caller was required to provide personal identifying information of the

victim cardholder.  (*See, e.g.* Exh. 6 (Bank of America account notes); Trial Tr. at 95:2–11 (Simcox Testimony).)  The replacement cards were requested to be sent to the victim cardholder's address on file, meaning that they would have had to have been stolen from the victim cardholder prior to their use.  (*See* Exh. 6 (Bank of America card notes); Exh. 33 (Capital One card notes).)  Moreover, in order to complete his purchase at the Ben Bridge store on January 26, 2011, Mr. Tieu would have had to show, and did show, identification that matched victim J.T.'s name.  (Trial Tr. at 22:11–18 (Schick Testimony).)  Finally, Mr. Tieu had to sign J.T.'s name to purchase the watch on January 26, 2011 and the bag on February 1, 2011.  (Exh. 3 (January 26, 2011 purchase receipt); Exh. 11 (February 1, 2011 purchase receipt).)

Taken together, the evidence presented proves beyond a reasonable doubt that in using J.T.'s credit card and signing J.T.'s name to complete purchases on January 26, 2011 and February 1, 2011, Mr. Tieu knew that he was using a means of identification belonging to another person, specifically J.T.  The Court therefore finds Mr. Tieu guilty on Count Four for aggravated identity theft in violation of 18 U.S.C. § 1028A.

//
//
//
//
//
//
//
//
//
//
//

**III.    CONCLUSION**

For the foregoing reasons, the Court finds Mr. Tieu guilty on Counts Two and Three for access device fraud in violation of 18 U.S.C. § 1029(a)(2) and Count Four for aggravated identity theft in violation of 18 U.S.C. § 1028A.  The Court separately finds Mr. Tieu not guilty on Count One for conspiracy to commit access device fraud in violation of 18 U.S.C. § 1029(b)(2).


DATED:      February 27, 2014

_____
CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE